**The court incorporates by reference in this paragraph and adopts as the findings and analysis of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



**Dated: March 21 2019**

John P. Gustafson
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 03-30493 |
| | ) | |
| Ashaunti K. Sims, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Adv. Pro. No. 18-03005 |
| | ) | |
| Ashaunti K. Sims, | ) | Judge John P. Gustafson |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Bowling Green State University, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OF DECISION AND ORDER REGARDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This Adversary Proceeding comes before the court on the joint Motion for Summary Judgement ("Motion") [Adv. Doc. #26][1] filed by Defendants Bowling Green State University

---

1/ The court will cite to the docket in Plaintiff-Debtor's Chapter 7 case as [Doc.___] and to the docket in this adversary proceeding as [Adv. Doc.___]. Citations to Plaintiff-Debtor's 2003 Chapter 7 case will reference case number 03-30493.

("BGSU") and Synenberg & Associates, LLC ("Synenberg")(collectively, the "Defendants"). Plaintiff Ashaunti K. Sims[2] ("Plaintiff-Debtor" or "Sims") did not file a Response to Defendants' Motion.

In their Motion, Defendants seek an order finding that certain financial aid that Plaintiff-Debtor applied for, and that BGSU was required to return when she left school, is non-dischargeable under 11 U.S.C. §523(a)(8). In support of their Motion, Defendants have filed an Affidavit ("Affidavit") provided by Betsy Johnson ("Ms. Johnson"), BGSU's Director of Student Financial Aid and Scholarship. In addition, Defendants filed a copy of the First Set of Requests for Admission Propounded Upon Plaintiff, Ashaunti K. Sims ("Requests for Admission"). [Adv. Doc. 26-2].

The court has jurisdiction over Plaintiff-Debtor's underlying Chapter 7 case and this adversary proceeding pursuant to 28 U.S.C. §§1334, 157(a), and Local General Order 2012–7 of the United States District Court for the Northern District of Ohio. Actions to determine dischargeability are core proceedings that this Court may hear and determine. 28 U.S.C. §157(b)(1) and (b)(2)(I).

Because Defendants have demonstrated that the financial aid at issue qualifies as "an educational benefit overpayment or loan" and is therefore excepted from discharge under §523(a)(8), Defendants' Motion for Summary Judgment will be granted.

## FACTUAL BACKGROUND

Based on the unanswered "Requests for Admissions"[3] [Adv. Doc. #15], Sims "attended

---

2/ The paperwork associated with Plaintiff-Debtor's loan reflects a spelling of her name as "A'Shaunti K. Sims". However, in filing the Chapter 7 Petition, and the Adversary Complaint, Plaintiff used the name "Ashaunti K. Sims". The court will use the spelling reflected in Plaintiff-Debtor's Petition and the caption of her Adversary Complaint.

3/ Pursuant to Fed. R. Civ. P. 36(a)(3), made applicable in bankruptcy proceedings by Fed. R. Bankr. P. 7036, unanswered Requests for Admission are deemed admitted. This rule is self-executing. *See*, *Meggitt v. Neema, LLC (In re Meggitt)*, 2018 WL 1121585 at *2, 2018 Bankr. LEXIS 521 at *4 (Bankr. N.D. Ohio Feb. 27, 2018); *In re Ottawa River Steel*, 324 B.R. 636, 638 (Bankr. N.D. Ohio 2005). The Requests for Admissions were served on June 7, 2018. [Adv. Doc. #15, p. 9]. At the latest, responses to the Requests for Admission should have been provided by August 23, 2018. *See*, [Adv. Doc. #21, p. 2]("**IT IS ORDERED** that Discovery deadline is extended to **August 23, 2018** for all parties. Discovery must be commenced in time to be completed by **August 23, 2018**;").

Additionally, requests for admission under Fed. R. Civ. P. 36 must only deal in "facts, the application of law to fact, or opinions about either," not "pure requests for opinions of law…[n]or…requests seeking legal conclusions." *U.S. v. Petroff-Kline*, 557 F.3d 285, 293 (6th Cir. 2009)(quoting Fed. R. Civ. P. 36(a)(3); 7 *Moore's Federal Practice* §36.10(8) at 36-26 (3d ed. 2008)). The court is satisfied that the Requests for Admission cited in this decision fit within the scope of that rule.

2

BGSU and, or registered for classes at BGSU for several semesters beginning in Fall-1998 through Fall-2001." [Adv. Doc. #26-2, p. 5, Q. 2]. "While attending BGSU as a student, [Sims] applied on, at least, two (2) occasions to receive financial assistance in the form of loans, grants and, or other financial aid, made, insured or guaranteed by the United States Department of Education, the Ohio Department of Education and, or BGSU." [*Id.*, Q. 3].

Ms. Johnson's Affidavit reflects that on or about July 3, 2001, Sims registered for Fall 2001 classes at BGSU Firelands Campus. [Adv. Doc. #26-1, p. 1, ¶3; *see also*, Adv. Doc. #26-2, p. 6, Q. 6]. She incurred "institutional charges" – essentially tuition and fees – in the amount of $1,651. [*Id.*]. Sims applied for financial aid assistance and signed a Master Promissory Note for all of the federal loans she received. [Adv. Doc. #26-1, p. 1 & 6, ¶4 & Exhibit C]. The Affidavit reflects that it was BGSU's standard practice to send each financial aid recipient an award letter that included a Fact Sheet detailing each student's responsibilities and obligations regarding their financial aid.[4] [Adv. Doc. #26-1, p. 2 & 7-12, ¶5 & Exhibit D].

BGSU's records reflect that on or about August 23, 2001 Sims was issued a check for the difference between the net amount owed for tuition and fees, and the amount of financial aid she received. [Adv. Doc. #26-1, p. 2, ¶6]. The check was in the amount of $3,496. [*Id*., & Ex. A.].[5] The Affidavit states: "Upon information and belief, Sims cashed this refund check around August 27, 2001." [Adv. Doc. #26-1, p. 2, ¶6]. It appears that part of this "information and belief" is based upon the endorsement on the back of the copy of the check, which appears to be of "Ashaunti Sims." *See*, [Adv. Doc. 10-1; Adv. Doc. #26-1, Ex. A, p. 4].

In addition, Sims failed to respond to Requests for Admission #8, #9 and #10, which stated:

8. You did receive financial assistance in the form of loans, grants and, or other educational aid for Fall-2001. [Adv. Doc. #26-2, p. 6, Q. #8].

9. You received a $3,496 refund check from BGSU for the remainder of her Fall-2001 financial aid that had not otherwise been applied to institutional costs. [Adv. Doc. #26-2, p. 6, Q. #9].

---

[4] It should be noted that: 1) Betsy Johnson became employed as Director of Student Financial Aid and Scholarships in February, 2016; and 2) Exhibit D is a captioned "Fact Sheet 2001-2002" and does not reflect Sims name, containing only the general salutation: "Dear BGSU Student". [Adv. Doc. #26-1, p. 7]. There was no Request for Admission related to the "Fact Sheet 2001-2002" letter.

[5] "A true and accurate copy of the check is attached hereto as Exhibit A." [Affidavit of Betsy Johnson, Adv. Doc. #26-1, p. 2, ¶6].

> 10. You signed and cashed a $3,496 refund check from BGSU and, Exhibit 2, attached hereto, is a reasonable copy of that check. [Adv. Doc. #26-2, p. 7, Q. #10].

On or about October 5, 2001, Sims withdrew from all her Fall 2001 classes. [Adv. Doc. #26-1, p. 2, ¶7; *see also*, Adv. Doc. #26-2, p. 7, Q. 11 – 13]. The Affidavit states that this was the first time that BGSU had been notified that Sims was not attending her classes. [*Id.*]. BGSU granted Sims' withdrawal, and made it effective August 24, 2001, a date before classes started. [*Id.*; Adv. Doc. #26-2, p. 7, Q. 13].

The Affidavit states that BGSU was required to return 100% of Sims' Fall 2001 loans and grants back to their respective sources. [Adv. Doc. #26-1, p. 2, ¶7]. On or about October 19, 2001, BGSU returned Sims' financial aid for Fall 2001 in the amount of $4,126.74. [Adv. Doc. #26-1, p. 2, ¶12]. A letter dated October 24, 2001 was sent to Sims, reflecting the various amounts that had been returned. [Adv. Doc. #26-1, p. 3, ¶14 & Ex. G, p. 20]. The letter stated that: "This reduction in your financial aid has increased your account balance to $4,126.74 due no later than November 30, 2001." [Adv. Doc. #26-1, Ex. G, p. 20]. BGSU sent Sims three letters in early 2002 reflecting that a debt of more than $4,000 was owed. [Adv. Doc. #26-1, p. 3, ¶14 & Exs. H, I & J; Adv. Doc. #26-2, p. 8, Q. 14 & Exs. 3, 4 and 5].

Plaintiff-Debtor's Complaint alleges, and Defendants' Answer admits, that Sims filed a Chapter 7 bankruptcy case on January 28, 2003. [Adv. Doc. #9, p. 2, ¶2; Adv. Doc. #1-2, Ex. A-C; *see also*, Adv. Doc. #26-2, p. 8, Q. 16]. The exhibits filed by Plaintiff-Debtor with her original Complaint[6] and the docket in the 2003 Chapter 7 case, reflect that the previous Chapter 7 was Case Number 03-30493, filed by Ashaunti K. Sims, *pro se*. BGSU was listed on Schedule F as being owed $4,800 in Sims' 2003 Chapter 7 case.[7] [Adv. Doc. #1-2, Ex. A; Adv. Doc. #9, p. 2, ¶3; Adv. Doc. #10 p. 2, n.3; *see also*, Adv. Doc. #26-2, p. 8, Q. 17]. BGSU filed a proof of claim in the 2003 case. [Case No. 03-30493, Claims Register #1-1; *see also*, Adv. Doc. #26-2, p. 8, Q. 16 & Ex. 6]. The claim was filed as an unsecured claim in the amount of $4,141.74. [*Id.*].

Question 18 of the unanswered Requests for Admission stated: "On or before August 25, 2004, you retained an attorney to contact BGSU and discuss the discharge of your Fall-2001 debt

---

6/ Exhibits were attached to Plaintiff-Debtor's original Complaint [Adv. Doc. #1-2], but were not attached to the Amended Complaint, although there were references made to the same "attached" Exhibits. [Adv. Doc. #9].

7/ The Joint Answer asserts that a previous case had been filed by Sims, Case No. 02-37186, filed on October 21, 2002, and that BGSU filed a claim in that case as well. A review of the docket in Case No. 02-37186 reflects that it was dismissed on an Order to Show Cause for failure to file certain documents. [Case No. 02-37186, Doc. #8].

in the above captioned bankruptcy. (See Exhibits 7 and 8, as attached hereto.)" [Adv. Doc. #26-2, p. 8, Q. 18].

Per Ms. Johnson's Affidavit, BGSU determined that, of the $4,126.74 in Title IV funds returned by BGSU, $3,496.00 that had been paid to Sims was non-dischargeable in her 2003 Chapter 7 bankruptcy because "it represented monies which BGSU was required to refund to Sims but subsequently repay to the federal agencies as a result of Sims' ineligibility." [Adv. Doc. #26-1, p. 3, ¶13]. BGSU determined that the remaining balance of $630.74 was discharged in Sims' 2003 bankruptcy. [*Id.*].

Unanswered Requests for Admission, question 19 to 21, stated:

19. On August 10, 2010 you filed a Chapter 13 Petition in this Court, Case No. 10-35556 and, on September 30, 2013, you filed a Chapter 7 Petition in this Court, Case No. 13-34023. In neither case did you schedule BGSU and, or the Fall-2001 deficiency, in any amount. [Adv. Doc. #26-2, p. 8, Q. 19].

20. You acknowledge that prior to this instant matter; you have not instituted any action to determine the dischargeability of the Fall-2001 deficiency referenced herein. [Adv. Doc. #26-2, p. 9, Q. 20].

21. You acknowledge that the only correspondence you received from Synenberg is the letter, a copy of which you attached to your Complaint. [Adv. Doc. #26-2, p. 9, Q. 21].

## LAW AND ANALYSIS

### I. Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, summary judgment is proper only where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In reviewing a motion for summary judgment, however, all inferences "must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-88, 106 S.Ct. 1348, 1355-57, 89 L.Ed.2d 538 (1986).

The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, "and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any'

which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552-53, 91 L.Ed.2d 265 (1986). The moving party can discharge its initial burden of proof by either coming forward with evidence showing the absence of a genuine issue of material fact, or by showing that there is no such issue by pointing out to the court that there is an absence of evidence to support the non-moving party's case. *Id.* at 325, 106 S.Ct. at 2554.

Where the moving party has met its initial burden, the adverse party "may not rest upon the mere allegations or denials of his pleading but...must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A genuine issue for trial exists if the evidence is such that a reasonable factfinder could find in favor of the nonmoving party. *Id.* "The non-moving party, however, must provide more than mere allegations or denials ... without giving any significant probative evidence to support" its position. *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998).

**II. Discharge Of Student Loans Under 11 U.S.C. Section 523(a)(8).**

The Complaint specifically alleges that the debt in issue was discharged in 2003, under the pre-BAPCPA version of 11 U.S.C. §523(a)(8). [Adv. Doc. #9, p. 3, ¶3]("The BAPCPA act under §523 was altered in 2005. This debt however was incurred in 2003 before the changes in the code. The Debtor in this case did not receive any loan funds and as such should not be exempt from discharge under §523(a)(8)(A)(ii).[8]"). Part of the harm alleged in the Complaint is the failure to release Sims' transcripts, which Plaintiff-Debtor asserts is a violation of the discharge injunction.

However, based upon the Affidavit of Betsy Johnson and the unanswered Requests for Admission, Sims did receive funds from the various student loans that initially went directly to BGSU for her tuition and fees, clearly contradicting the allegation in the Complaint that Sims "did not receive any loan funds" *See*, [Adv. Doc. #26-1, p. 1-2, ¶¶ 3, 4, 6 & Exs. A & C; Adv. Doc. #26-2, p. 6, Qs. 6 & 8-10]. On a Motion for Summary Judgment, if the moving party meets her burden of showing the absence of genuine issues of fact, the burden shifts to the nonmoving party to establish the existence of a fact requiring trial. *Automated Sol. Corp., v. Paragon Data Sys., Inc.*, 756 F.3d 504, 521 (6th Cir. 2014); *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. Here,

---

8/ The court notes that, although she pleaded a claim under the pre-BAPCPA version of §523, Plaintiff-Debtor cited to the post-BAPCPA version of the statute.

Sims, as the nonmoving party, has failed to establish the existence of a sufficiently disputed fact requiring trial.

While the Complaint is correct that the court must look at whether the debt in issue was excepted from discharged under §523(a)(8) as it existed in 2003, the required factual finding that Sims received and cashed a check for the funds in issue means that the obligation was non-dischargeable under either version of the statute.   In other words, the differences between the 2003 and current version of §523(a)(8) do not, on this record, implicate triable facts that would bar a grant of summary judgment.

In 2003, 11 U.S.C. §523(a)(8) provided that a discharge under §727 "does not discharge an individual debtor from any debt -- ":

> (8) for an educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an education benefit, scholarship or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents;

Here, Sims has not asserted that not discharging the debt owed to BGSU would constitute an "undue hardship" under the statute. [Adv. Doc. #9].   Nor has that issue ever been previously litigated. [Adv. Doc. #26-2, p. 9, Q. 20].

In order for an obligation to be non-dischargeable under the pre-BAPCPA version of §523(a)(8), the statute states that debt must be incurred "for an education benefit overpayment or loan."   Here, the obligations included loans taken out by the Debtor, seeking an "educational benefit." [Adv. Doc. #26-1, Affidavit of Betsy Johnson, p. 2, ¶9, Exs. B, E, E-1 – E-5, F, & G; Adv. Doc. #26-2, pp. 5-6, Qs. 3 & 5].   BGSU was obligated to return grant monies after Sims withdrew from her classes. [Adv. Doc. 26-1, Affidavit of Betsy Johnson, P. 2, ¶¶8, 11 & 12, & Ex. D, p. 10].   The repayment of those monies by BGSU means that the funds Sims received and retained were "for an educational benefit overpayment" as contemplated by the statute.

One factor that courts look at in determining whether there is a "loan" is the existence of a written promise to repay. *See*, *Doyle v. Creeger* (*In re Creeger*), 2016 WL 3049972 at **9-10, 2016 Bankr. LEXIS 2076 at **20-23 (Bankr. N.D. Ohio May 20, 2016).   In this case, the

7

Defendants have produced a Master Promissory Note signed by Plaintiff-Debtor in 1999.[9] [Adv. Doc. 26-1, Ex. C; Adv. Doc. #26-2, p. 5, Q. #4]("4. Attached as Exhibit 1 is a fair copy of the Master Promissory Note you signed and executed on or about August 19, 1999.").

Another factor courts have been asked to consider is: did the debtor actually receive any monies? While receiving cash is not always necessary,[10] the fact that the Debtor received money from BGSU for the amounts that were in excess of her tuition obligations would also support a finding that the obligations in issue qualify as loans. *See*, *In re Chambers*, 348 F.3d 650, 657 (7th Cir. 2003)("…nonpayment of tuition qualifies as a loan" under §523(a)(8) "in two classes of cases: where funds have changed hands, or where there is an agreement whereby the college extends credit")(internal quotations omitted); *see also*, *In re Gakinya*, 364 B.R. 366, 372-373 (Bankr. W.D. Mo. 2007)(applying the pre-BAPCPA version of §523(a)(8)). Additionally, the explanatory fact sheet provided to Sims by BGSU clearly states that students are responsible for the repayment of aid that they are later deemed unqualified for. [Adv. Doc. #26-1, Ex. D, p. 10].

The statute also requires that the "loan" or "education benefit overpayment" have been "made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution." 11 U.S.C. §523(a)(8)(A)(i). Ms. Johnson's Affidavit and the proferred loan documents reflect: "Stafford" federal direct subsidized loans, [Adv. Doc. #26-1, p. 13 & 16, Exs. E & E-3; Affidavit of Betsy Johnson, p. 1, ₱₱4, 8 & 12], a Pell Grant, [Adv. Doc. #26-1, pp. 5, 19-20, Exs. B, F & G; Affidavit of Betsy Johnson, p. 2, ₱11], a Federal Supplemental Education Opportunity Grant ("Federal SEOG"), [Adv. Doc. #26-1, pp. 5 & 23, Exs. B & E-3; Affidavit of Betsy Johnson, p. 2, ₱12] and Ohio Instructional Grants[11] [Adv. Doc. #26-1, pp. 5, Ex. B; Affidavit of Betsy Johnson, p. 2, ₱12]. In addition, questions 3 and 5 of the unresponded-to Requests for Admission requested admissions that the financial aid Sims was provided "made, insured or guaranteed by the United States Department of Education, the Ohio Department of Education and, or BGSU." [Adv. Doc. #26-2, p. 5-6, Qs. 3 & 5].

---

9/ *See e.g.*, *Cazenovia College v. Renshaw (In re Renshaw)*, 222 F.3d 82, 89–90 (2nd Cir. 2000)(holding, in an "unpaid tuition" case, that an extension of credit should qualify as a loan under §523(a)(8) when a contract to transfer money, goods, or services is reached prior to or contemporaneous with the transfer.).

10/ *See e.g.*, *Johnson v. Missouri Baptist College (In re Johnson)*, 218 B.R. 449, 457 (8th Cir. BAP 1998).

11/ The court notes that, although financial aid in the form of grants are not loans when they are issued, a student's withdrawal from classes and consequent grant ineligibility generally changes the grants, be they state or federal in origin, into obligations that the student is required to pay.

The court is mindful of its duty to construe the evidence and draw inferences in favor of the non-moving party when considering the propriety of summary judgment. *See*, *Zenith Radio Corp.*, 475 U.S. at 586-88, 106 S.Ct. at 1355-57. However, even when viewed in the light most favorable to Plaintiff-Debtor, the facts before the court are amenable to only one conclusion, namely that Plaintiff-Debtor's debt owed Defendants clearly falls within the ambit of §523(a)(8)'s exception from discharge provision, be it under the 2003 or the current version of the statute.[12]

Based upon the unrebutted facts presented via Ms. Johnson's Affidavit, the attached Exhibits, and the admissions resulting from Plaintiff-Debtor's failure to answer Defendants' Requests for Admission, the court finds that the debts in issue were excepted from Sims' discharge under the 2003 version of 11 U.S.C. §523(a)(8) because they were "educational benefit overpayments" as contemplated by the statute. As such, Plaintiff-Debtor's discharge, entered on May 22, 2003 [Case No. 03-30493, Doc. #17], did not discharge those obligations, and no injunction against the collection of those non-discharged debts ever went into effect. *See*, 11 U.S.C. §524(a)(2). Accordingly, Summary Judgment will be granted in favor of Defendants.

**THEREFORE**, for the foregoing reasons, good cause appearing,

**IT IS ORDERED** that Defendants' Motion for Summary Judgment [Adv. Doc. #26] be, and hereby is, **GRANTED**. A separate judgment shall issue consistent with this memorandum.

---

[12] Although the legal effect of Plaintiff-Debtor's discharge in her 2013 Chapter 7 case [Case No. 13-34034, Doc. #24] was not mentioned in the Amended Complaint, an Eastern District of Wisconsin bankruptcy court faced with facts very similar to the case at hand found that the financial aid before it qualified as excepted from discharge under the post-BAPCPA version of §523(a)(8). *See*, *In re Cross*, 2018 WL 1448669, 2018 Bankr. LEXIS 832 (Bankr. E.D. Wisc. March 22, 2018). For the reasons stated in *Cross*, the court finds that, even if the post-BAPCPA version of §523(a)(8) applies in this case, the debts owed Defendants are nevertheless excepted from discharge.